The Honorable Stuart Vess State Representative 6717 Pontiac Drive North Little Rock, AR 72116-5232
Dear Representative Vess:
I am writing in response to your request for my opinion on the following questions:
 1. May a city charge a "service fee" to a municipal court defendant using a credit card to pay his fine and costs without violating any law applicable to court costs?
2. If so, what is the appropriate amount?
 a. Is it the difference between the "base amount" of fines and costs and the amount necessary for the city to realize the base amount, taking into account the "discount" the card provider charges?
 b. If not the above, then how should the amount be computed and what care should be taken to ensure that the city not charge inappropriately under the circumstances?
RESPONSE
In my opinion, the answer to your first question is "yes." I believe the answer to question 2(a) is likewise "yes," rendering question 2(b) moot.
Question 1: May a city charge a "service fee" to a municipal courtdefendant using a credit card to pay his fine and costs without violatingany law applicable to court costs?
The legislation enabling payment of fines and costs by credit card is set forth in Act 864 of 1997 and codified at A.C.A. § 16-17-128, which provides as follows:
 (a) All municipal courts may accept payment of fines and associated costs by an approved credit card.
 (b)(1) All municipal courts are authorized to enter into contracts with credit card companies and to pay those companies fees normally charged by those companies for allowing the court to accept their credit cards in payment as authorized by subsection (a) of this section.
 (2)(A) Where the offender pays fines by an approved credit card, the court shall assess a service fee equal to the amount charged to the court by the credit card issuer.
 (B) This charge may be added to, and become a part of, any underlying obligation.
In my opinion, at issue is whether this legislation is consistent with A.C.A. § 16-10-302(a), which provides: "Except as otherwise provided by this act, all filing fees and all court costs shall be uniform for each type of case in all general and limited jurisdiction court of this state." The Note to A.C.A. § 16-10-301 states that the term "this act" in this statute refers to Act 1256 of 1995, which does not authorize the imposition of a fee for payment of costs and fines by credit card. The question, then, is whether charging of a fee to cover the transaction cost of accepting payment by credit card renders the court costs for any particular "type of case" something other than "uniform."
In addressing this question, I am guided by the principle that legislative enactments that might be read as conflicting must, if possible, be reconciled, read together in a harmonious manner, and each given effect. Gritts v. State, 315 Ark. 1, 864 S.W.2d 859 (1993); City ofFort Smith v. Tate, 311 Ark. 405, 844 S.W.2d 356 (1993). Repeal by implication is not favored and is "never allowed except where there is such an invincible repugnancy between the former and later provisions that both cannot stand together." Donoho v. Donoho, 318 Ark. 637,887 S.W.2d 290 (1994). When two legislative enactments are in such irreconcilable conflict that both cannot stand together, the conflicting provisions of one are repealed by implication by the other. Donoho,318 Ark. 637; Ward School Bus Manufacturing, Inc. v. Fowler, 261 Ark. 100,547 S.W.2d 394 (1977). The Supreme Court has also stated: "[A] repeal by implication is accomplished where the Legislature takes up the whole subject anew and covers the entire ground of the subject matter of a former statute and evidently intends it as a substitute, although there may be in the old law provisions not embraced in the new." Morrison v.Jennings, 328 Ark. 278, 293, 943 S.W.2d 559 (1997), quoting Uilkie v.State, 309 Ark. 48, 53, 827 S.W.2d 131, 134 (1992), quoting Berry v.Gordon, 237 Ark. 547, 376 S.W.2d 279 (1964).
In the present case, I believe both common sense and the principles just recited dictate concluding that these two statutes do not conflict. I agree completely with the premise underlying your second question — viz., that the legislative intent behind both statutes is to realize a certain uniform "base amount" for costs associated with various types of actions.[1] Section 16-17-128 of the Code is clearly intended only as an elective convenience to those appearing in municipal court, offering them a payment alternative that will result in the court's realizing the same amount it would have realized had the uniform fines and costs been paid in cash. As the sponsor of Act 864, you report that "the intent was that the court (or city of which the court was a part), be able to `pass through' the discount charged by credit card provider and to supersede any rule that might preclude same where court fines and costs are concerned." I agree that the legislation authorizes precisely such a "passing through" of "discounts," and I do not consider this practice inconsistent with any other provision of law. In my opinion, then, there is no need to even address the issue of supersession.
Question 2: If so, what is the appropriate amount? (a) Is it thedifference between the "base amount" of fines and costs and the amountnecessary for the city to realize the base amount, taking into accountthe "discount" the card provider charges? (b) If not the above, then howshould the amount be computed and what care should be taken to ensurethat the city not charge inappropriately under the circumstances?
In my opinion, the formula you propose in subsection (a) of your question is clearly the correct one, rendering moot the second part of your question. You offer the example of a combined base amount of fines and costs totaling $100. Assuming the credit card provider charges 1.5%, the court will need to impose a surcharge of $1.52 in order to realize $100 in revenues. (1.5% x $101.52 = $1.52; $101.52 — $1.52 = $100.00)[2]
Finally, I will address your concern that certain credit card companies impose "operating regulations" containing provisions like the following: "[M]erchants are not permitted to impose a surcharge, or `extra fee' on credit card transactions . . . for using the (credit) card." In my opinion, this particular provision, which you identify as imposed by "one of the leading card providers," would not apply to a surcharge imposed by a court since a court is not a "merchant." Moreover, I believe that for contracts entered into after 1997, when Act 864 was enacted, any provision purporting to bar municipal court surcharges would be void as contrary to the legislature's express directive authorizing such charges. As the Supreme Court noted in Woodend v. Southland RacingCorp., 337 Ark. 380, 384, 989 S.W.2d 505 (1999): "It is . . . well settled that the law in effect at the time a contract is made forms a part of the contract as if it had been expressed in the contract. Mahurinv. Oaklawn Jockey Club, 299 Ark. 13, 771 S.W.2d 19 (1989)."
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
[1] The base amounts to be charged as costs associated with various offenses are set forth at A.C.A. § 16-10-305.
[2] The amount of the surcharge slightly exceeds $1.50 (1.5% of $100) because the credit card provider is also charging 1.5% on the surcharge itself.