The Honorable Brenda Gullett State Senator #28 Longmeadow Pine Bluff, AR 71603
Dear Senator Gullett:
I am writing in response to your request for my opinion on the following question:
 Is the mayor in charge of day-to-day operations of police and fire departments where a civil service commission has hiring and firing authority of the chiefs? If not, who is?
Correspondence attached to your request reflects that the city at issue is Pine Bluff, a city of the first class with a mayor-council form of government.
RESPONSE
In my opinion, only the chiefs themselves are statutorily charged with the power to craft the rules and regulations that, upon city-council approval, will control day-to-day operations. However, the mayor is charged with supervisory authority over city employees, including policemen and firemen, and he bears ultimate power and responsibility to enforce the rules governing day-to-day operations.
Section 14-51-212 of the Code (Repl. 1998) restricts as follows the authority of civil service commissions to adopt rules regulating police and fire departments in cities of the first class:
 (a) The powers and duties of every civil service commission established pursuant to this chapter shall be and are hereby expressly limited such that the said commissions shall not have any control nor shall said commissions attempt to exercise any control over the normal and routine day-to-day operations of a police or fire department, directly or indirectly.
 (b) No provision of this chapter shall be construed to provide authorization to said commissions to have such authority.
Subsection 14-51-301(c) of the Code (2001 Supp.) further provides:
 The commission shall adopt such rules not inconsistent with this chapter for necessary enforcement of this chapter, but shall not adopt any rule or rules which would authorize any interference with the day-to-day management or operation of a police or fire department.
In light of these statutes, I believe a civil service commission clearly has no day-to-day operational control of police and fire departments, irrespective of whether it has hiring and firing authority over the chiefs.[1]
The question of precisely what authority has "charge of" the day-to-day operation of a police or fire department is somewhat more complicated. Section 14-51-302 of the Code provides:
 All employees in any fire or police department affected by this chapter shall be governed by rules and regulations set out by the chief of their respective police or fire departments after rules and regulations have been adopted by the governing bodies of their respective municipalities.
In the attached Ark. Op. Att'y Gen. No. 94-274, my immediate predecessor interpreted this statute to mean that "city councils may only adopt rules and regulations that have been presented by the chiefs of the department," and only then if the rules and regulations deal with "the day-to-day management or operation of their departments" (citing Fregov. Jonesboro Civil Service Commission, 285 Ark. 35, 684 S.W.2d 258
(1985)). I consider this conclusion fully consistent with the statutory language, which unequivocally locates decision-making authority in the chiefs, subject only to a requirement of council approval.
Having offered this opinion, I should note that my immediate predecessor, specifically addressing the situation in Pine Bluff, has also read the statute just quoted in conjunction with various other statutes, suggesting that at least some authority with respect to police and fire department operations lies in the mayor. See the attached Ark. Op. Att'y Gen. No. 91-188. In support of this conclusion, my predecessor invoked the following statutes:
 The city council shall have power to establish a city police department, to organize it under the general superintendence of the mayor, and to prescribe its duties and define its powers in such manner as will most effectually preserve the peace of the city, secure the citizens thereof from personal violence, and safeguard their property from fire and unlawful depredations.
A.C.A. § 14-52-101 (emphasis added).
 (a) The city council shall establish fire departments and provide them with proper engines and such other equipment as shall be necessary to extinguish fire and preserve the property of the city and of the inhabitants from conflagration.
 (b) The council shall promulgate such rules and regulations to govern the department as they shall deem expedient.
A.C.A. § 14-53-101.
 (a) The mayor of the city shall be its chief executive officer and conservator of its peace. It shall be his special duty to cause the ordinances and regulations of the city to be faithfully and constantly obeyed.
(b) The mayor shall:
 (1) Supervise the conduct of all the officers of the city, examine the grounds of all reasonable complaints made against them, and cause all their violations of duty or other neglect to be properly punished or reported to the proper tribunal for correction. . . .
A.C.A. § 14-43-504.
My predecessor offered the following regarding the interplay of these statutes:
 As for departmental rules, the mayor's "general superintendence" of the police department (§ 14-52-101) suggests that the police chief is "accountable" to the mayor in this regard. This conclusion is also suggested with respect to the fire chief under A.C.A. § 14-43-504(b)(1). The police chief and the fire chief are, however, ultimately accountable to the city council (except in connection with civil service laws, as noted above), which alone has the power of removal. See A.C.A. § 14-43-505.
Ark. Op. Att'y Gen. No. 99-188.
Under a basic principle of statutory interpretation, if at all possible, I am obliged to reconcile any apparent tensions among legislative enactments, seeking at all times to determine the legislature's intent. As the court noted in Southwestern Bell Telephone Co. v. Arkansas PublicService Commission, 69 Ark. App. 323, 333, 13 S.W.3d 197 (2000):
 In determining the intent of the legislature, this court must look at the whole act and, as far as practicable, give effect to every part, reconciling provisions to make them consistent, harmonious, and sensible. Brandon v. Arkansas Pub. Serv. Comm'n, 67 Ark. App. 140, 992 S.W.2d 834 (1999). This court not only looks at the language of the statute but also its subject matter, the object to be accomplished by the statute, the purpose to be served, and other appropriate matters. Id.
Moreover, legislative enactments that might appear to be in conflict must be reconciled, read together in a harmonious manner, and each given effect, if possible. Gritts v. State, 315 Ark. 1, 864 S.W.2d 859 (1993);City of Fort Smith v. Tate, 311 Ark. 405, 844 S.W.2d 356 (1993). Repeal by implication is not favored and is "never allowed except where there is such an invincible repugnancy between the former and later provisions that both cannot stand together." Donoho v. Donoho, 318 Ark. 637,887 S.W.2d 290 (1994). In addition, the provisions of an act adopted later in time ordinarily repeal the conflicting provisions of an earlier act.Daniels v. City of Fort Smith, 268 Ark. 157, 594 S.W.2d 238 (1980). Finally, statutory provisions that particularly address a certain situation will normally be given effect over more general provisions.
At issue, it seems to me, is whether the mayor's "superintendence" over the police department and his general authority to "[s]upervise the conduct of all the officers of the city" in any sense conflict with the subsequently adopted and more narrowly focused provisions of A.C.A. §14-51-302, which locates solely in the chiefs the power to fashion day-to-day management and operational policies, subject only to the requirement of city-council approval. I think the answer to this question is almost certainly "no." I see no inconsistency in suggesting that the mayor is ultimately responsible for ensuring compliance with department rules and regulations but that the chiefs, with city-council approval, are the only officials authorized to fashion those rules and regulations in the first instance.
Specifically addressing your question, then, I do believe the mayor might be described as "in charge of day-to-day operations of police and fire departments," but only insofar as he bears ultimate supervisory responsibility to see to it that employees observe the policies of the respective departments. I must stress again that this ultimate supervisory authority carries with it no power to usurp the chiefs' authority, subject to council approval, actually to fashion the policies controlling day-to-day operations. Moreover, purely as a practical matter, I would think the chiefs themselves would normally function as the senior supervisors monitoring the day-by-day performance of their respective departments.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
Enclosures
[1] Acts 523 and 914 of 1995, currently codified at A.C.A. §14-42-110(a)(2), provided that "in cities of the first and second class with civil service commissions, the governing body of the city may, by ordinance, delegate the authority to appoint and remove the heads of the police and fire departments to the city's civil service commission."