The Honorable Jodie Mahony State Representative 106 West Main Street El Dorado, AR 71730-5637
Dear Representative Mahony:
I am writing in response to your request for my opinion on a question I will paraphrase as follows:
 If a student health professional (a) is enrolled in an institution of higher learning for training in the treatment of medical emergencies; (b) is not compensated for participating in an emergency service, although participation may be a course requirement; (c) is not part of a state agency or other organized volunteer agency and hence is not a "qualified volunteer" under the Arkansas Volunteer Immunity Act, A.C.A. § 16-6-101 through -105; (d) is not an" emergency service worker" under A.C.A. § 12-75-101 through -131; (e) is not a licensed health professional; (f) is supervised by a licensed health professional at an emergency exercise or the site of a declared emergency; and (g) acts in good faith, in the manner of a reasonable and prudent person, and not in a manner that would constitute gross negligence, then will the student be protected from civil liability when acting during an emergency drill or an actual declared emergency? If so, under what particular provision of the Arkansas Code?
RESPONSE
In my opinion, the only statute that might bear upon your question under the assumptions you have asked me to accept is the state's "Good Samaritan" law, A.C.A. § 17-95-101 (Repl. 2002). Assuming a court held that a student could not be characterized as "trained" in administering emergency assistance, and further assuming that the student met the other conditions set forth in this statute, I believe the student would be shielded from tort liability if he were actually administering emergency assistance. I do not believe a student would be eligible for tort immunity pursuant to A.C.A. § 17-95-101 if the alleged tort occurred while the student was participating in an "emergency drill."
In accordance with your request, I will assume that neither the Arkansas Volunteer Immunity Act, A.C.A. § 16-61-101 through -105 (1987), nor the Arkansas Emergency Services Act of 1973, A.C.A. § 12-75-101 through -131 (Repl. 1999 Supp. 2003), bears on your question. Given these assumptions, I believe the operative inquiry is whether the student described in your request would be shielded from tort liability pursuant to the state's "Good Samaritan" statute, A.C.A. § 17-95-101(Repl. 2002), which provides in pertinent part:
 (a) Any person licensed as a physician or surgeon under the laws of the State of Arkansas or any other person, who, in good faith, lends emergency care or assistance without compensation at the place of an emergency or accident, and who was acting as a reasonable and prudent person would have acted under the circumstances present at the scene at the time the services were rendered, shall not be liable for any civil damages for acts or omissions performed in good faith.
 (b) Any person who is not a physician, surgeon, nurse, or other person trained or skilled in the treatment of medical emergencies who is present at an emergency or accident scene, and who:
 (1) Believes that the life, health, and safety of an injured person or a person who is under imminent threat of danger could be aided by reasonable and accessible emergency procedures under the circumstances existing at the scene thereof;
 (2) Proceeds to lend emergency assistance or service in a manner reasonably calculated to lessen or remove the immediate threat to the life, health, or safety of such a person;
 (3) Lends only such emergency care or assistance as a reasonable and prudent person concerned for the immediate protection of the life, health, and safety of the person for whom the services were rendered would lend under the circumstances,
 shall not be held liable in civil damages in any action in this state for any harm, injury, or death of any such person so long as the person rendering such services acted in good faith and was acting as a reasonable and prudent person would have acted under the circumstances present at the scene at the time the services were rendered.
I will note at the outset that I consider the two highlighted passages in the above excerpt to be inconsistent. Subsection (a) of the statute, which was enacted pursuant to Acts 1963, No. 46, insulates from liabilityany person who (a) renders emergency assistance; (b) does so in good faith; (c) does so without compensation; and (d) acts as a reasonable and prudent person would in doing so.[1] Subsection (b) of the statute, which was added by amendment in Acts 1979, No 725, appears to modify subsection (a) in two respects: first, it restricts the grant of immunity to individuals not trained or skilled in the treatment of medicalemergencies; and, second, it omits the requirement that the individual rendering assistance be uncompensated.
In Ark. Op. Att'y Gen. No. 97-060, which addressed whether a volunteer firefighter would be insulated from liability under the Good Samaritan law, one of my predecessors analyzed as follows the interplay between A.C.A. §§ 17-95-101(a) and -101(b):
 In Arkansas, in many instances, "volunteer" firefighters do receive some type of compensation for their actions. In such cases, it may be contended that the "Good Samaritan Law" would not apply. The statute is not entirely clear in this regard, however. As originally enacted by Act 46 of 1963, it was clear that the absence of compensation was a prerequisite to the immunity offered under the" Good Samaritan Law." The original law was comprised of subsection (a) only. The law was amended by Act 725 of 1979, however, to retain and restate subsection (a) and to add subsection (b). Subsection (b) standing alone, does not refer to the absence of compensation. It applies, however, only to persons who are not physicians, surgeons, nurses, or other persons trained or skilled in the treatment of medical emergencies. If the volunteer firefighter is trained in the treatment of medical emergencies and receives compensation as a volunteer firefighter for the actions taken, it is my opinion he or she will not be covered by the "Good Samaritan Law." If the volunteer firefighter is not so trained, the act is a little unclear on whether the receipt of compensation precludes immunity thereunder. There are no Arkansas cases construing the language of the statute on this point, and perhaps legislative clarification is indicated. It is my opinion, however, reading the act as a whole, that the absence of compensation is in all likelihood a prerequisite to immunity under either subsection (a) or (b).
Although the issue is open to debate and would greatly benefit from legislative clarification, I concur with my predecessor's conclusion that both the absence of training and the absence of compensation are prerequisites to immunity under the statute. In offering this opinion, I am guided by various principles of statutory construction. First, legislative enactments that are alleged to be in conflict must be reconciled, read together in a harmonious manner, and each given effect, if possible. Gritts v. State, 315 Ark. 1, 864 S.W.2d 859 (1993); City ofFort Smith v. Tate, 311 Ark. 405, 844 S.W.2d 356 (1993). Repeal by implication is not favored and is "never allowed except where there is such an invincible repugnancy between the former and later provisions that both cannot stand together." Donoho v. Donoho, 318 Ark. 637,887 S.W.2d 290 (1994). In my opinion, the provision in A.C.A. § 17-95-101(a) extending immunity to anyone meeting the recited conditions is flatly inconsistent with the more recently enacted provision in A.C.A. §17-95-101(b) extending immunity only to untrained individuals rendering emergency assistance under the recited conditions. Accordingly, applying the principles just recited, I believe A.C.A. § 17-95-101(b) should control with respect to the issue of training. By contrast, I do not believe that the failure to mention the issue of compensation in A.C.A. § 17-95-101(b) should be read as impliedly repealing the provision in A.C.A. § 17-95-101(a) directing that only uncompensated providers of emergency care may be eligible for immunity under the act.
With respect to your specific question, the issue initially arises whether the student rendering assistance might be deemed "trained" to an extent that would render him ineligible to receive immunity under the statute. In my opinion, this question is purely one of fact to be addressed by a court acquainted with all of the relevant circumstances. This office is neither authorized nor equipped to undertake any such factual inquiry. If a court were to conclude that a student rendering emergency care who met the other conditions set forth in A.C.A. §17-95-101 was insufficiently advanced in his studies to be considered "trained," I believe the court would extend immunity to the student.
With respect to the issue of compensation, it would not appear that a student rendering supervised emergency assistance in the course of his training could be described as receiving any "compensation" other than the training itself. On the contrary, I assume the student rendering supervised emergency assistance would himself be compensating his school for the experience in the form of tuition. In my opinion, the "compensation" referenced in A.C.A. § 17-95-101(a) should be read as denoting monetary compensation paid an individual for the service of providing emergency assistance.
Finally, I should note that the foregoing discussion has focused only on the availability of immunity to a student engaged in providing actual emergency assistance to one or more individuals reasonably perceived to be in need thereof. However, the question you have posed seeks my opinion regarding the availability of immunity to two categories of individuals — namely, students "acting during an emergency drill or an actual declared emergency." (Emphasis added.) In my opinion, assuming that the phrase "an emergency drill" denotes a mock emergency scenario designed solely to provide instruction to students, I do not believe the Good Samaritan law would shield participating students from potential tort liability under such circumstances.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] The requirement I have listed as (d) was added to A.C.A. §17-105-119(a) by Acts 1979, No. 725.